UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| MURAD REED,<br><br>    Plaintiff,<br><br>    v.<br><br>CLEAR RECON CORP. and<br>CITIMORTGAGE, INC. erroneously sued<br>as CITIBANK, N.A.<br><br>    Defendants. | Case No. 18-cv-07715-LB<br><br>**AMENDED ORDER GRANTING IN PART AND DENYING IN PART THE DEFENDANT'S MOTION TO DISMISS**<br><br>Re: ECF No. 11 |

**INTRODUCTION**

In 2018, the plaintiff Murad Reed, who is proceeding *pro se*, defaulted on a mortgage loan, and the defendant, CitiMortgage, Inc. ("Citi") initiated foreclosure proceedings by recording a Notice of Default and a Notice of Trustee's sale.[1] The plaintiff then sued Citi, claiming in part that Citi filed the Notice of Default without exploring alternatives to foreclosure with him at least 30 days before recording the Notice of Default, in violation of the California Homeowner Bill of

---

[1] Mot. – ECF No. 11 at 9–10; Compl. – ECF No. 1 at 14 (¶ 16); Notice of Default, Ex. A to Compl. – ECF No. 1 at 57–59 & Ex. 10 to Request for Judicial Notice ("RJN") – ECF No. 12 at 49–51; Notice of Trustee's Sale, Ex. B to Compl. – ECF No. 1 at 61–62 & Ex. 11 to RJN – ECF No. 12 at 53–55. Citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

Rights ("HBOR").[2] Citi moved to dismiss under Federal Rule of Civil Procedure 12(b)(6), in part on the ground that there is no HBOR violation because the plaintiff's past loan modifications in 2010 and 2014 show the plaintiff's knowledge of his loan-modification options in 2018.[3]

The court denies the motion to dismiss the HBOR claim and (because they are predicated on the HBOR claim) the claim under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, and the claim for declaratory relief. A borrower's knowledge of a loan-modification option can mean that a violation of HBOR is not material. *Foote v. Wells Fargo Bank, N.A.*, No. 15-CV-04465-EMC, 2016 WL 2851627, at *5–6 (N.D. Cal. May 16, 2016). But no case supports the conclusion as a matter of law that a lender's compliance with HBOR is excused because years earlier, a borrower obtained a loan modification. Instead, the cases finding non-material violations all involve ongoing loan-modification efforts. *See, e.g., id.*

The court otherwise grants Citi's motion to dismiss the plaintiff's other claims for cancellation of instruments, negligence, constructive fraud, intentional infliction of emotional distress, and the claims for declaratory-relief and § 17200 claims (to the extent that they are predicated on these claims) and gives the plaintiff leave to amend his complaint by April 4, 2019. The court dismisses the claim for slander of title with prejudice because the plaintiff cannot cure the claim's deficiencies. The court dismisses the claims for HBOR treble damages and injunctive relief because they are not stand-alone claims and instead are remedies.

---

[2] Compl. – ECF No. 1 at 10 (¶ 1).

[3] Mot. – ECF No. 11 at 11.

**STATEMENT**[4]

In October 2006, the plaintiff bought a home in Oakland, California, with a $405,000 loan from Argent Mortgage Company, secured by a first deed of trust on the property.[5] The deed was assigned initially to Mortgage Electronic Registration Systems, Inc. (MERS) and then to Citi.[6]

The plaintiff defaulted on the loan and received a permanent loan modification from Citi in 2010.[7] He defaulted again, and a notice of default was recorded on December 15, 2014.[8] In 2015, CitiMortgage approved the plaintiff for a second loan modification under the Home Affordable Modification Program ("HAMP") and rescinded the 2014 notice of default.[9]

The plaintiff defaulted again.[10] On March 15, 2018, Clear Recon Corp. recorded a Notice of Default, and on August 9, 2018, it recorded a Notice of Trustee's Sale.[11] The property has not been sold.[12]

The plaintiff alleges that "[t]he Notice of Default is false in that[] it fails to properly credit Plaintiff for the payments that Plaintiff made toward the mortgage and therefore overstates the

---

[4] The facts are from the allegations in the complaint, documents attached to the complaint, and documents submitted by Citi in a declaration and in a request for judicial notice. Compl. – ECF No. 1; Dempsey Decl. – ECF No. 11-1; RJN – ECF No. 12. The court considers the loan documents under the incorporation-by-reference doctrine and takes judicial notice of the public records. *Knievel v. ESPN*, 393 F.3d 1068, 1076–77 (9th Cir. 2005); *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001).

[5] Compl. – ECF No. 1 at 13 (¶ 15); Deed of Trust, Ex. 1 to RJN– ECF No. 12 at 6–24; Grant Deed, Ex. 2 to RJN – ECF No. 12 at 26–27.

[6] Assignments of Deeds of Trusts, Exs. 3–6 to RJN – ECF No. 12 at 29–38. In 2014, the deed of trust was assigned to Citigroup Mortgage Loan Trust, Inc. Asset-Backed Pass-Through Certificates, Series 2007-AMC2, U.S. Bank National Association as trustee, the current beneficiary. Assignment, Ex. 7 to RJN – ECF No. 12 at 39–40.

[7] Modification Agreement, Ex. A to Dempsey Decl. – ECF No. 11-1 at 5–10.

[8] Notice of Default, Ex. 8 to RJN – ECF No. 12 at 42–45.

[9] HAMP Modification Agreement, Ex. B to Dempsey Decl. – ECF No. 11-1 at 12–25; Notice of Rescission, Ex. 9 to RJN – ECF No. 12 at 47.

[10] Mot. – ECF No. 11 at 9; Compl. – ECF No. 1 at 14 (¶ 16).

[11] Notice of Default, Ex. A to Compl. – ECF No. 1 at 57–59 & Ex. 10 to RJN – ECF No. 12 at 49–51; Notice of Trustee's Sale, Ex. B to Compl. – ECF No. 1 at 61–62 & Ex. 11 to RJN – ECF No. 12 at 54–55.

[12] Mot. – ECF No. 11 at 10.

amount of the plaintiff's default if any."[13] The Notice of Trustee's Sale similarly is "false" because it does not credit him for payments that he made and thus overstates the amount of his default.[14] The Notice of Default "is defected and is of no force and effect because, in spite of their declaration, prior to recording the notice of default, neither the loan servicer nor the lender contacted Plaintiff in person or by telephone to discuss options of avoiding foreclosure as required by the California Homeowner Bill of Rights."[15] The assignments of the mortgage note and deed of trust were defective, "resulting in imperfect security interests and claims."[16]

Citi did not contact the plaintiff in person or by telephone before recording the Notice of Default to "discuss options for avoiding foreclosure as mandated by the express requirement of [the] California Homeowner Bill of Rights ["HBOR"]."[17] It did not notify him of his "right to request a meeting within 14 days, and failed to provide the Plaintiff, homeowner, with a toll-free phone number to locate a HUD certified counseling agency."[18] It failed to notify him of his options for applying for a foreclosure alternative, as mandated by HBOR.[19]

The complaint has 12 claims:

**(1)** a violation of HBOR based on Citi's failure to (a) contact the plaintiff 30 days before recording the Notice of Default to discuss options for avoiding foreclosure, (b) notify him of his right to request a meeting in 14 days or provide him with a toll-free number to locate a HUD-certified counseling agency, and (c) notify him of his options for applying for a foreclosure alternative;

**(2)** a violation of Cal. Civ. Code § 2923.5 by failing to give him notice and options to avoid foreclosure (essentially, the same claim as claim 1);

---

[13] Compl. – ECF No. 1 at 14 (¶ 16).
[14] *Id.* (¶ 17).
[15] *Id.*
[16] *Id.*
[17] *Id.* at 15 (¶¶ 22–23).
[18] *Id.* at 18 (¶ 30).
[19] *Id.* (¶ 31).

AMENDED ORDER – No. 18-cv-07715-LB    4

**(3)** treble damages for the HBOR violation;

**(4)** cancellation of instruments (the Notice of Default and the Notice of Trustee's Sale) on the ground that they are invalid because (a) they fail to credit payments and overstate his default, (b) Citi did not contact him 30 days before recording the Notice of Default to discuss foreclosure options, in violation of HBOR, and (c) Citi cannot show proper assignment of his note and trust, resulting in an imperfect security interest;

**(5)** negligence based on Citi's (a) failure to maintain accurate loan records that reflected the payments that the plaintiff made, (b) breach of its duty ensure that it did not defraud him, and (c) foreclosure without legal authority and proper documentation;

**(6)** constructive fraud based on the recording of false and fraudulent real-estate documents (meaning, the Notice of Default and Notice of Trustee's Sale);

**(7)** intentional infliction of emotional distress based on Citi's foreclosure proceedings;

**(8)** slander of title based on Citi's recording of the Notice of Default and Notice of Trustee's Sale;

**(9)** quiet title to enjoin Citi from asserting any adverse claim to the plaintiff's property interest;

**(10)** declaratory relief regarding the validity of the assignments of the deeds of trust, the validity of the Notice of Default, and the parties' property interests;

**(11)** a violation of California's unfair competition law, Cal. Bus. & Professions Code § 17200, based on Citi's deceptive business practices of (a) improperly characterizing his accounts as in default, (b) misapplying his payments, (c) failing to provide him with adequate monthly statement information, (d) instituting improper or premature foreclosure proceedings, (e) collecting improper costs that are not legally due under the mortgage or California law, (f) charging him late fees for late payments (after failing to credit his actual payment), (g) failing to disclose the fees allowable under the mortgage contract, (h) ignoring grace periods, (i) executing and recording false and misleading documents, and (j) acting as beneficiaries and trustees without the legal authority to do so; and

1 **(12)** injunctive relief to prevent foreclosure.[20]

The plaintiff filed the complaint in state court, and Citi removed the case to federal court based on diversity jurisdiction and moved to dismiss the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).[21] The plaintiff opposed the motion.[22]

All parties, including the nominal defendant Clear Recon Corp, consented to the undersigned's jurisdiction.[23]

## STANDARD OF REVIEW

### 1. Rule 12(b)(6) Standard for Motions to Dismiss

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of what the claims are and the grounds upon which they rest. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a claim for relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555 (internal citations omitted). Courts liberally construe a complaint filed by a party who is representing himself. *Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000).

To survive a motion to dismiss, a complaint must contain sufficient factual allegations, which when accepted as true, "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

---

[20] *Id.* at 15–27 (¶¶ 20–138).

[21] Notice of Removal – ECF No. 1 at 1–8; Mot. – ECF No. 11. The plaintiff contends that there is no federal-question or diversity jurisdiction and removal thus was improper. Opp. – ECF No. 23 at 2. There is diversity jurisdiction. 28 U.S.C. § 1332(c)(1). The plaintiff is a citizen of California, Citi (which is incorporated New York and has its principal place of business in Missouri) is not, and the amount in controversy exceeds $75,000 because the loan balance is over $500,000. Notice of Removal – ECF No. 1 at 2–3 (¶¶ 5–7), 5 (¶ 13). Clear Recon is a nominal party. *Id.* at 5 (¶ 11).

[22] Opp. – ECF No. 23.

[23] Consents – ECF Nos. 10, 19, and 22.

AMENDED ORDER – No. 18-cv-07715-LB    6

defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotations omitted).

If a court dismisses a complaint, it must give leave to amend unless the "pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

### 2. Rule 9(b) Standard for Pleading Fraud

"In alleging fraud . . ., a party must state with particularity the circumstances constituting fraud . . . . Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). This means that "[a]verments of fraud must be accompanied by the 'who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba–Geigy Corp. USA,* 317 F.3d 1097, 1106 (9th Cir. 2003). Like the basic "notice pleading" demands of Rule 8, a driving concern of Rule 9(b) is that defendants be given fair notice of the charges against them. *In re Lui*, 646 Fed. App'x 571, 573 (9th Cir. 2016) ("Rule 9(b) demands that allegations of fraud be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.") (quotation omitted); *Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007) (Rule 9(b) requires particularity "so that the defendant can prepare an adequate answer").

### 3. Pro Se Pleadings

"The Supreme Court has instructed the federal courts to liberally construe the inartful pleading of pro se litigants. It is settled that the allegations [in a pro se complaint,] however inartfully pleaded[,] are held to less stringent standards than formal pleadings drafted by lawyers." *Eldridge v. Block,* 832 F.2d 1132, 1137 (9th Cir. 1987) (internal citations and quotations omitted); *see*

AMENDED ORDER – No. 18-cv-07715-LB        7

*Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (per curiam); *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner,* 404 U.S. 519, 520 (1972) (per curiam); *Hamilton v. Brown*, 630 F.3d 889, 893 (9th Cir. 2011).

## ANALYSIS

### 1. HBOR Claims (Claims One, Two, and Three)

The plaintiff claims that Citi violated HBOR by failing to (a) contact him at least 30 days before recording the Notice of Default to discuss options for avoiding foreclosure, (b) notify him of his right to request a meeting in 14 days or provide him with a toll-free number to locate a HUD-certified counseling agency, and (c) notify him of his options for applying for a foreclosure alternative.[24]

Citi does not contest that it is required to contact a borrower at least 30 days before recording a Notice of Default to explore foreclosure options and to advise the borrower of his right to request an in-person meeting to occur within 14 days.[25] Indeed, California Civil Code § 2923.5 requires it. Cal. Civ. Code § 2923.5(a)(1–2). Instead, Citi contends that it did not violate HBOR because it twice approved the plaintiff for loan modifications in 2010 and 2015, which was more than 30 days before it initiated foreclosure proceedings on March 15, 2018 by recording the Notice of Default.[26] More specifically, Citi communicated with the plaintiff when he defaulted in 2010, received a loan modification, defaulted in 2014 (with a corresponding Notice of Default), and had the Notice of Default set aside when he received a second loan modification.[27] This suffices, Citi argues, because a borrower's past applications for a loan modification demonstrate his awareness

---

[24] Compl. – ECF No. 1 at 18 (¶¶ 29–30). In his opposition, the plaintiff also alleges that Citi violated HBOR's restriction on dual-track foreclosure and failed to provide HBOR's guaranteed single point of contact. Opp. – ECF No. 23 at 13. The court does not address the claims but notes that the complaint does not contain any fact allegations about any loan-modification efforts.

[25] Mot. – ECF No. 11 at 11.

[26] *Id.*

[27] *Id.*

AMENDED ORDER – No. 18-cv-07715-LB         8

of his modification options and is fatal to any claim under § 2923.5.[28] At the pleadings stage, the court denies the motion to dismiss.

HBOR ensures that borrowers are "considered for, and have a meaningful opportunity to obtain, available loss mitigation options" such as loan modifications or other alternatives to foreclosure. Cal. Civ. Code 2923.4. It "provides borrowers with a private right of action [against loan servicers and trustees] for [their conduct during foreclosure and loan-modification processes that result in] certain material violations of HBOR." *Penermon v. Wells Fargo Bank, N.A*, 47 F. Supp. 3d 982, 993 (N.D. Cal. 2014). To achieve that end, California Civil Code § 2923.5 requires contact with a borrower at least 30 days before recording a notice of default, and it requires notice of the borrower's right to request an in-person meeting within 14 days. Cal. Civ. Code § 2923.5(a)–(b).[29]

---

[28] *Id.* at 11–12.

[29] Cal. Civ. Code § 2923.5 provides in relevant part:

> (a)(1) A mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default pursuant to Section 2924 until both of the following:
>
> (A) Either 30 days after initial contact is made as required by paragraph (2) or 40 days after satisfying the due diligence requirements as described in subdivision (e). . . .
>
> (2) The mortgage servicer shall contact the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure. During the initial contact, the mortgage servicer shall advise the borrower that he or she has the right to request a subsequent meeting and, if requested, the mortgage servicer shall schedule the meeting to occur within 14 days. The assessment of the borrower's financial situation and discussion of options may occur during the first contact, or at the subsequent meeting scheduled for that purpose. In either case, the borrower shall be provided the toll-free telephone number made available by the United States Department of Housing and Urban Development (HUD) to find a HUD-verified housing counseling agency. Any meeting may occur telephonically.
>
> (b) A notice of default recorded pursuant to Section 2924 shall include a declaration that the mortgage servicer has contacted the borrower, has tried with due diligence to contact the borrower as required by this section, or that no contact was required because the individual did not meet the definition of "borrower" pursuant to subdivision (c) of Section 2920.5. . . .
>
> (e) A notice of default may be recorded pursuant to Section 2924 when a mortgage servicer has not contacted a borrower as required by paragraph (2) of subdivision (a) provided that the failure to contact the borrower occurred despite the due diligence of the mortgage servicer. . . .

A borrower's opportunity to apply for, and knowledge of the availability of, a loan modification can render a violation of HBOR not material. *Foote v. Wells Fargo Bank, N.A.*, No. 15-CV-04465-EMC, 2016 WL 2851627, at *5–6 (N.D. Cal. May 16, 2016). Past loan modifications can demonstrate a borrower's awareness of his loan-modification options. *Id.* But Citi cites no case that supports a conclusion that the plaintiff's loan modifications and communications with Citi in 2010 and 2014 excuses Citi's compliance — in the context of a later unrelated default — with § 2923.5's requirement that Citi explore foreclosure alternatives with the plaintiff-borrower at least 30 days before it records a Notice of Default. Instead, the cases it cites all involve a borrower's current difficulty making loan payments, current efforts to obtain loan modifications, and a concurrent recording of foreclosure documents.

In *Tepte v. PHH Mortg. Corp.*, for example, the borrower became disabled in 2014, which changed his income. No. 16-cv-7936-JSW (PLAx), 2017 WL 2273190, at *1 (C.D. Cal. May 16, 2017). Thereafter, he (and his co-borrower) submitted several loan-modification applications in 2014 and 2015 and had "extensive discussions" before a Notice of Default was recorded in April 2015. *Id.* at *2–4. Those discussions included letters inviting the borrower to contact the servicer to discuss alternatives to foreclosure, attempts to submit missing information, and multiple contacts with loss-mitigation personnel. *Id.* The court concluded that "because Plaintiffs were well aware of their options and actively communicated with [the loan servicer] about their loan modifications, any . . . alleged violations [based on an alleged failure to discuss alternatives to foreclosure other than loan modifications] . . . were immaterial." *Id.* at *4.

*Millman v. Wilmington Savings Fund Soc. FSB* is an order denying involved the denial of the plaintiffs' motion for a preliminary injunction. No. 16-cv-07402-EMC, 2017 WL 396149, at *1 (N.D. Cal. Jan. 30, 2017). There, the borrowers complained that the lender did not contact them to explore alternatives to foreclosure before recording a notice of default. *Id.* at *2. The court denied the motion for a preliminary injunction, holding that the purpose of the contact requirement is to appraise a borrower of loan-modification options and that the plaintiff here was aware of her loan-modification options based on her past applications. *Id.* (quoting *Foote*, 2016 WL 2851627, at *5–6). The order in *Millman* does not discuss the timeframe of the prior loan applications, but the

underlying docket reveals an ongoing process of submitting loan-modification agreements for three years, a denial of the application, an appeal, the submission of further documents, and the ultimate recording of the Notice of Default.[30]

*Foote* also involved a borrower's attempt to cure a default. 2016 WL 2851627, at *1. The lender filed a Notice of Foreclosure and a Notice of Trustee's Sale in 2015, but after the borrower filed her complaint, the lender evaluated her loan modification and determined that she was not eligible for a loan modification. *Id.* at *2. It advised her of her appeal rights and other financial steps that she might take. *Id.* The court held that the borrower knew of her loan-modification options because she had loan applications in process in 2013, 2014, and 2015 and had communicated actively with the lender about her applications. *Id.* at *5. The court thus held that the borrower was not deprived of her opportunity to obtain loss mitigation as a result of any violation of HBOR. *Id.*

The court cannot conclude at the pleadings stage that the facts here — like the facts in *Tepte*, *Millman*, and *Foote* — render any HBOR violation immaterial. Those cases involved active ongoing loan-modification applications and extensive communications with the lender during that process. *Accord Green v. Central Mortg. Co.*, 148 F. Supp. 3d 852, 871 (N.D. Cal. 2015) (communications in the months before the Notice of Default was recorded). The violations of HBOR were demonstrably not material. By contrast, the plaintiff's engagement with the lender here was years earlier, resulting in successful loan modifications and the rescission of a notice of default. The court denies the motion to dismiss.

Citi also moves to dismiss claim three (for treble damages under HBOR) on the ground that damages are remedies, and not the basis for a stand-alone claim, and the plaintiff in any event is not eligible for damages because the house has not been sold. The court dismisses claim three on these grounds. *See* Cal. Civ. Code § 2924.12(a)(1) (if a trustee's deed upon sale has not been recorded, a borrower may bring an action for injunctive relief); *id.* § 2924.12(b) (damages recoverable "[a]fter a trustee's deed upon sale has been recorded."); *Foote*, 2016 WL 2851627 at

---

[30] Defendants' Opp. to Preliminary-Injunction Mot., No. 3:16-cv-07402-EMC – ECF No. 19 at 8–9.

*7 (whether a plaintiff may be awarded an injunction or damages depends on whether a sale of the property has occurred) (citing Cal. Civ. Code § 2924.12(a)(1) & (b)).

### 2. Cancellation of Instruments and Quiet Title (Claims Four and Nine)

In claim four, the plaintiff seeks cancellation of the Notice of Default and the Notice of Trustee's Sale on the ground that they are invalid because they fail to credit payments and overstate his default.[31] In claim nine, the plaintiff makes similar allegations in support of his claim to quiet title to enjoin Citi from asserting any claims adverse to the plaintiff's property interest.[32] Citi moves to dismiss the claims on the ground that the plaintiff did not tender his indebtedness, which it contends is necessary for claims for cancellation of instruments.[33]

Generally, for actions in equity, a borrower who seeks to quiet title and set aside instruments such as the Notices here must plead a present ability to tender the full amount of the debt. *Green*, 148 F. Supp. 3d at 869 (citations omitted). There are exceptions, such as a borrower's attack of the underlying debt. *Id.* (citations omitted). The inquiry is within the court's discretion, especially at the pleadings stage. *Id.* at 870.

Here, the plaintiff's facts about failure to credit payments are conclusory and do not plausibly attack the underlying debt or establish the corresponding offset to the mortgage obligation. The court dismisses the claim.

---

[31] Compl. – ECF No. 1 at 21–23 (¶¶ 49–51). This claim also is predicated on (a) Citi's failure to contact the plaintiff at least 30 days before recording the Notice of Default to discuss to discuss foreclosure options, in violation of HBOR, and (b) Citi's alleged inability to show proper assignment of the note and trust, resulting in an imperfect security interest. HBOR does not require tender. *Green*, 148 F. Supp. 3d at 870. The court does not read HBOR into the equitable-rescission claims because the HBOR claims here are separate. To the extent that the claim is predicated on improper assignments and Citi's resulting "imperfect" security interest, the plaintiff does not have standing to pursue that claim. *Rubio v. U.S. Bank, N.A.*, No. C 13–05752 LB, 2014 WL 1318631, at *7-8 (N.D. Cal. Apr. 1, 2014) (analyzing *Glaski v. Bank of America, N.A.,* 218 Cal. App. 4th 1079 (2013), and noting that every court in the district that has evaluated *Glaski* has found it unpersuasive).

[32] *Id.* at 31 (¶¶ 99–103).

[33] Mot. – ECF No. 11 at 13–14.

### 3. Negligence (Claim Five)

The plaintiff claims negligence based on Citi's (a) failure to maintain accurate loan records that reflected the payments that the plaintiff made, (b) breach of its duty to ensure that it did not defraud him, and (c) foreclosure without legal authority and proper documentation.[34] Citi contends that it does not owe the plaintiff a duty.[35] Because lenders generally do not owe borrowers a duty of care, the court dismisses claim five.

Lenders do not owe borrowers a duty of care unless their involvement in a transaction goes beyond their "conventional role as a mere lender of money." *See, e.g.*, *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 231 Cal. App. 3d 1089, 1095-96 (1991). Still, "*Nymark* does not support the sweeping conclusion that a lender never owes a duty of care to a borrower." *Alvarez v. BAC Home Loans Servicing, L.P.*, 228 Cal. App. 4th 941, 945 (2014). A duty may arise even where the lender remains within its "conventional role" of merely loaning money. *Id.* Deciding whether a lender owes a duty in a given case requires a court to balance the non-exhaustive factors set forth in *Biankaja v. Irving*, 49 Cal. 2d 647, 650 (1958).[36] *E.g.*, *Alvarez*, 228 Cal. App. 4th at 945-46 & n. 5. In *Alvarez*, for example, the court held that — in light of HBOR — once a lender agrees to consider a loan modification, "the *Biankaja* factors clearly weigh in favor of a duty." *Id.* at 948.

The plaintiff pleads no facts showing that Citi exceeded its role as a conventional lender of money. Instead, the plaintiff alleges only a failure to maintain accurate loan records that reflected his payments and a subsequent negligent foreclosure.[37] These allegations do not plausibly plead a negligence claim because they involve only Citi's servicing a loan and acting as a lender within the scope of its conventional role. *See Powell v. Wells Fargo Home Mortgage*, No. 14–cv–04248–

---

[34] Compl. – ECF No. 1 at 23–24 (¶ 56–58).

[35] Mot. – ECF No. 11 at 14–15.

[36] The factors are as follows: (1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to him, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct, and (6) the policy of preventing future harm. *See Nymark,* 231 Cal. App. 3d at 1098–96.

[37] As discussed below, the plaintiff did not plead fraud with particularity and thus does not plead a negligence claim based on a duty to not defraud him.

MEJ, 2015 WL 4719660, at *10 (N.D. Cal. Aug. 7, 2015) (dismissing a negligence claim predicated only on a failure to maintain accurate loan records, credit payments accurately, and otherwise service the loan properly) (citing *Rockridge Tr. v. Wells Fargo, N.A.,* 985 F. Supp. 2d 1110, 1162 (N.D. Cal. 2013)).

The court dismisses the negligence claim.

### 4. Constructive Fraud (Claim Six)

The plaintiff claims constructive fraud based on Citi's recording the allegedly false and fraudulent Notice of Default and Notice of Trustee's Sale.[38] The court dismisses the claim because — as Citi contends — the plaintiff did not plead all elements of fraud or plead fraud with particularity under Rule 9(b).[39]

Under California law, the elements of fraud are: (1) misrepresentation; (2) knowledge of the falsity; (3) intent to defraud; (4) justifiable reliance; and (5) resulting damage. *Lazar v. Superior Court,* 12 Cal. 4th 631, 638 (1996). "The general rule for liability for non-disclosure is that even if material facts are known to one party and not the other, failure to disclose those facts is not actionable fraud unless there is some fiduciary or confidential relationship giving rise to a duty to disclose." *La Jolla Village Homeowners' Ass'n v. Superior Court*, 212 Cal. App. 3d 1131, 1151 (1989) (disapproved on other grounds by *Jimenez v. Superior Court*, 29 Cal. 4th 473, 479–80 (2002)).

Here, the plaintiff did not plead the breach of a fiduciary relationship. *Nymark*, 231 Cal. App. 3d at 1093, n.1. Moreover, his allegations of fraud are conclusions, not facts.[40] Among other deficiencies, he does not say what Citi said or did that was false or fraudulent.

The court dismisses the fraud claim.

---

[38] Compl. – ECF No. 1 at 24–26 (¶¶ 61–72).

[39] Mot. – ECF No. 11 at 16–17.

[40] *See, e.g.*, Compl. – ECF No. 1 at 25 (¶¶ 62–71) (alleging false documents (but not saying how the documents were false), improper crediting of payments (without any specifics), and concealing facts (again without specifics).

AMENDED ORDER – No. 18-cv-07715-LB    14

### 5. Intentional Infliction of Emotional Distress (Claim Seven)

The plaintiff claims intentional infliction of emotional distress based on Citi's foreclosure proceedings.[41] The court dismisses the claim because — as Citi contends — the plaintiff does not allege extreme and outrageous conduct.[42]

In California, "[a] cause of action for intentional infliction of emotional distress exists when there is (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Kelley v. The Conco Cos.,* 196 Cal. App. 4th 191, 215 (2011). "A defendant's conduct is outrageous when it is so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Id.* (internal quotation marks omitted).

"[M]ultiple California district courts have held that the act of foreclosing on a home does not qualify as the type of extreme behavior that supports an [intentional infliction of emotional distress] claim absent allegations of bad faith." *Kennedy v. World Savings Bank, FSB*, No. 14-cv-05516-JSC, 2015 WL 1814634, at *9 (N.D. Cal. Apr. 21, 2015) (citing *Helmer v. Bank of America, N.A.*, No. 2:12-CV-00799-TLN-CKD, 2013 WL 4546285, at *8 (E.D. Cal. Aug. 27, 2013)); *Quinteros v. Aurora Loan Servs.*, 740 F. Supp. 2d 1163, 1172 (E.D. Cal. 2010); *Davenport v. Litton Loan Serv., LP*, 725 F. Supp. 2d 862, 884 (N.D. Cal. 2010) ("Where a lending party in good faith asserts its right to foreclose according to contract. . . its conduct falls shy of 'outrageous,' however wrenching the effects on the borrowers.").

The plaintiff alleges no facts about any extreme or outrageous conduct or bad faith by Citi and instead alleges only that Citi initiated foreclosure proceedings. This does not state a claim. *See, e.g., Kennedy*, 2015 WL 1814634, at *10. The court thus dismisses the claim.

---

[41] *Id.* at 26–28 (¶¶ 76–86).

[42] Mot. – ECF No. 11 at 16.

### 6. Slander of Title (Claim Eight)

The plaintiff claims slander of title based on Citi's recording of the allegedly defective Notice of Default and Notice of Trustee's Sale.[43] The alleged defects are the allegedly improper assignments of the mortgage note and the deed of trust, resulting in an allegedly imperfect security interest.[44] The court dismisses the claim because — as Citi contends — its conduct was privileged and the plaintiff has not plausibly pled that the assignments were invalid.[45]

Slander of title "occurs when a person, without privilege to do so, publishes a false statement that disparages title to property and causes pecuniary loss." *Truck Ins. Exch. v. Bennett*, 53 Cal. App. 4th 75, 84 (1997). The required elements for a claim for slander of title are "(1) a publication, (2) without privilege or justification, (3) falsity, and (4) direct pecuniary loss." *Sumner Hill Homeowners' Ass'n, Inc. v. Rio Mesa Holdings, LLC,* 205 Cal. App. 4th 999, 1030 (2012).

A "privileged" publication is one made "[i]n a communication, without malice, to a person interested therein [] by one who is also interested." Cal. Civ. Code § 47(c)(1). Nonjudicial foreclosure documents are subject to this privilege. *See* Cal. Civ. Code § 2924(d); *see also Ogilvie v. Select Portfolio Serv'g*, No. 12–CV–001654–DMR, 2012 WL 3010986, at *3 (N.D. Cal. July 23, 2012) (collecting cases). Malice is defined as actual malice, meaning "that the publication was motivated by hatred or ill will towards the plaintiff or by a showing that the defendant lacked reasonable grounds for belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights." *Kachlon v. Markowitz*, 168 Cal. App. 4th 316, 336 (2008).

First, as discussed above, the plaintiff does not have standing to challenge the improper assignments and any resulting imperfect security interest, and he thus cannot say that Notices are "invalid" or "false." *Rubio*, 2014 WL 1318631, at *7–8. In any event, there are no facts about the assignments, and only conclusions that they are invalid. Second, the notice of default and sale are

---

[43] Compl. – ECF No. 1 at 29 (¶¶ 89–92).

[44] *Id.* (¶ 89).

[45] Mot. – ECF No. 11 at 17–19.

1  privileged as non-judicial foreclosure documents, and the plaintiff does not plead facts plausibly

2  demonstrating malice. *See* Cal. Civ. Code §§ 47(c)(1) & 2924(d)(1).

3  The court dismisses the claim.

### 7. Unfair Competition, Cal. Bus. & Prof. Code § 17200 (Claim Eleven)

The plaintiff claims a violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Professions Code § 17200, based on Citi's allegedly deceptive business practices of (a) improperly characterizing his accounts as in default, (b) misapplying his payments, (c) failing to provide him with adequate monthly statement information, (d) instituting improper or premature foreclosure proceedings, (e) collecting improper costs that are not legally due under the mortgage or California law, (f) charging him late fees for late payments (after failing to credit his actual payment), (g) failing to disclose the fees allowable under the mortgage contract, (h) ignoring grace periods, (i) executing and recording false and misleading documents, and (j) acting as beneficiaries and trustees without the legal authority to do so.[46] The court denies the motion to dismiss the § 17200 claim to the extent that it is predicated on the HBOR claim but otherwise dismisses the §17200 claim because — as Citi contends — the other predicate claims fail.[47]

California Business & Professions Code § 17200, also known as California's "Unfair Competition Law" or "UCL," prohibits "any unlawful, unfair or fraudulent" business practices. Cal. Bus. & Prof. Code § 17200. "Since section 17200 is [written] in the disjunctive, it establishes three separate types of unfair competition. The statute prohibits practices that are either 'unfair' or 'unlawful,' or 'fraudulent.'" *Pastoria v. Nationwide Ins.*, 112 Cal. App. 4th 1490, 1496 (2003) (quotation omitted); *see also CelTech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999).

To support a claim for a violation of the UCL, a plaintiff cannot simply rely on general common law principles. *Textron Fin. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 118 Cal.

---

[46] Compl. – ECF No. 1 at 34 (¶ 121)

[47] Mot. – ECF No. 11 at 20.

App. 4th 1061, 1072 (2004). A party may bring a section 17200 claim only if he or she shows that he or she "suffered injury in fact and has lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. To have standing, a plaintiff must sufficiently allege that (1) he has "lost 'money or property' sufficient to constitute an 'injury in fact' under Article III of the Constitution" and (2) there is a "causal connection" between the defendant's alleged UCL violation and the plaintiff's injury in fact. *See Rubio v. Capital One Bank*, 613 F.3d 1195, 1203-04 (9th Cir. 2010) (citations omitted). The UCL incorporates other laws and treats violations of those laws as unlawful business practices independently actionable under state law. *Chabner v. United Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000). Violation of almost any federal, state, or local law may serve as the basis for a UCL claim. *Saunders v. Superior Court*, 27 Cal. App. 4th 832, 838–39 (1994). In addition, a business practice may be "unfair or fraudulent in violation of the UCL even if the practice does not violate any law." *Olszewski v. Scripps Health*, 30 Cal. 4th 798, 827 (2003).

Here, the plaintiff's UCL claim is predicated on his allegations that Citi did not credit his payments, foreclosed on him illegally, and recorded false documents. As the court held in dismissing other claims, these are conclusions, not fact allegations that plausibly support any of the predicate claims (such as wrongful foreclosure, fraud, or negligence). The other allegations — charging late fees and improper costs — also are conclusory and in any event do not plausibly plead a negligence claim (the presumable predicate for the UCL claim). But because the plaintiff plausibly pleads a HBOR claim, the UCL claim survives to the extent that it is predicated on the HBOR claim. *Green*, 148 F. Supp. 3d. at 883.

### 8. Declaratory and Injunctive Relief (Claims Ten and Twelve)

The claim for declaratory relief claims survives because other claims survive. *Reyes v. Nationstar Mortg., LLC*, No. 15-CV-01109-LHK, 2015 WL 4554377, at *8 (N.D. Cal. July 23, 2015). The claim for injunctive relief is a remedy and not a stand-alone claim, and the court dismisses it. *Id.* at *7.

## CONCLUSION

The court grants in part and denies in part the motion to dismiss. The court denies the motion to dismiss the HBOR claim and (to the extent that they are predicated on the HBOR claim, the UCL claim and the claim for declaratory relief). The court dismisses the claim for slander of title with prejudice because the plaintiff cannot cure the claim's deficiencies. The court dismisses the claims for HBOR treble damages and injunctive relief because they are not stand-alone claims and instead are remedies. The court dismisses the claims for cancellation of instruments, negligence, constructive fraud, intentional infliction of emotional distress, and the declaratory-relief and § 17200 claims (to the extent that they are predicated on these claims) and gives the plaintiff leave to amend his complaint by April 4, 2019.

This disposes of ECF No. 11.

**IT IS SO ORDERED.**

Dated: March 7, 2019

_____
LAUREL BEELER
United States Magistrate Judge